kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AG CONNECTION SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREENE COUNTY MOTOR | ) | Case No. 08-4068-JAR |
| COMPANY and MONACO MOTOR | ) | |
| COACH, CORP. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The Court now considers defendant Monaco Coach Corporation's Motion to Dismiss

Counts I, III and V (Doc. 6). The parties have briefed the issues and the Court is ready to rule.

For the reasons detailed below, defendant Monaco's motion is granted.

## BACKGROUND

Plaintiff AG Connection Sales, Inc. ("AG") is a registered Kansas corporation with its

principal place of business in Nemaha County, Kansas. Greene County Motor Company

("Greene") is an Iowa corporation with its principal place of business in Iowa. Greene is an

authorized dealer and repair facility for Holiday Rambler products, and advertises on its website

Holiday Rambler products and repair services. Monaco Motor Corporation ("Monaco") is an

Indiana company with its principal place of business in Oregon. Monaco is the manufacturer of

Holiday Rambler products, including motor coaches.

In April 2007, AG and Greene entered into negotiations for AG's purchase of a new 2007

Holiday Rambler Neptune Motor Coach ("Motor Coach"). During these negotiations, Greene

represented to AG that the Motor Coach was new and of superior quality, with the intent of

inducing plaintiff to purchase the Motor Coach.  On May 10, 2007, the parties entered into a purchase agreement requiring that AG pay $113,910.00 and trade-in its 2002 Keystone motor coach.  The purchase agreement included a manufacturer's warranty.  In exchange for AG's full payment on May 10, 2007, Greene delivered the Motor Coach to AG in Seneca, Kansas.  Upon arrival, AG noticed that the mileage on the odometer was 2,326.  Nonetheless, AG accepted delivery of the Motor Coach in reliance on Greene's representation that the mileage was incurred during delivery of the Motor Coach.

Beginning on May 18, 2007, only eight days after delivery, AG began to experience problems with the Motor Coach and contacted Greene to discuss repairs under the warranty.  AG noticed that there was a defective heat gauge that continuously registered hot.  A repair facility examined the gauge, found it defective, but was unable to repair it.  AG also discovered that there were broken water lines that leaked under the refrigerator and caused damage to the floor and walls of the Motor Coach.  AG learned that the zip ties on the pipes were fastened too tightly during manufacturing, leading to the leaks.  Later, in June, AG took the Motor Coach to an authorized repair agent and repairs were made to the water lines under the warranty.

Also in May 2007, AG discovered that the step cover was defective, making it difficult to enter or exit the Motor Coach.  After presenting the problem to Greene and two other authorized repair facilities, plaintiff learned that none of the repair facilities could repair the step cover.  Shortly thereafter, the step cover became completely stuck, rendering it nearly impossible to use.

In addition to these problems, throughout the Summer and Fall of 2007, AG discovered that: the dash outlets were not connected prior to delivery; the water pump was not working; the air conditioner was not working; one of the rear mud flaps was deteriorating; and both the

2

passenger and driver side windshields began to crack.  Although AG had most of these problems repaired at various repair facilities, Greene denied AG's requests for repairs under the warranty for most of these items.

Starting in September, AG experienced even more problems with the Motor Coach. After hearing a strange sound and noticing smoke, AG took the Motor Coach to a repair facility that determined that both the left and right trailing arm components had failed, causing damage to the rear suspension unit and transmission.  At this point there were approximately 14,887 miles registered on the odometer.  AG contacted Monaco who denied AG's request for repairs under the warranty, contending that there was no coverage because the Motor Coach must have ran over a log.  AG then contacted Greene and was told to send the Motor Coach to the Holiday Rambler repair facility in Indiana at plaintiff's expense.  AG has invested over 167.5 hours addressing defects with the Motor Coach, while the defendants have continued to deny warranty coverage.

On May 25, 2008, AG filed this action against Greene and Monaco, claiming (1) breach of contract, (2) breach of express and implied warranties, (3) revocation of acceptance, (4) violation of the Magnuson-Moss Warranty Act, and (5) misrepresentation. [1]

**DISCUSSION**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes the truth of all well pleaded facts and views all reasonable inferences from those facts in favor of the

---

[1] Subsequently, plaintiff filed an amended complaint (Doc. 12) that corrected the name of the defendant Monaco and renumbered the counts in the complaint.  There is no substantive difference between the complaint and the amended complaint.

plaintiff.[2]  A claim will be dismissed for failure to state a claim only when the factual allegations

fail to state a claim that is plausible on its face.[3]  Thus, a "mere metaphysical possibility that

some plaintiff could prove some set of facts in support of the pleaded claims is insufficient;"[4] the

factual allegations in the complaint must raise a right to relief above the speculative level.[5]

Though "Rule 12(b)(6) does not require detailed factual allegations, . . . the complaint must set

forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a

formulaic recitation of the elements of a cause of action."[6]  When determining whether a claim

should be dismissed, the Court is mindful that the question is not whether the claimant will

ultimately prevail, but whether the claimant is entitled to offer evidence to support those claims.[7]

Monaco argues that Counts I, III, and V should be dismissed because AG has failed to

state a plausible claim for relief.  Monaco contends that while the allegations in Count I show a

contract between AG and Greene, the allegations do not suggest that there was a contract

between AG and Monaco for the sale of the Motor Coach.  Similarly, Monaco asserts that in

Count III, AG has not alleged that Monaco was a party to the contract between Greene and AG,

nor in privity of contract, and thus fails to state a claim against Monaco for revocation.  Nor does

the complaint allege that Greene was Monaco's agent for purposes of any alleged contract.

---

[2]*Lindsey v. Bowling*, —F. Supp. 2d—, 2008 WL 2331175, at *1 (D. Kan. June 6, 2008).

[3]*Culp v. Sifers*, 550 F. Supp. 2d 1276, 1281 (D. Kan. 2008) (quoting *Bell Atl. Corp. v. Twombly*, — U.S.—, 127 S.Ct. 1955, 1974 (2007)).

[4]*Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1194 (D. Kan. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

[5]*Culp*, 550 F. Supp. 2d at 1281(quoting *Twombly*, 127 S.Ct. at 1965).

[6]*Lindsey*, 2008 WL 2331175, at *1 (quoting *Twombly*, 127 S.Ct. at 1964).

[7]*Culp*, 550 F. Supp. 2d at 1281 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

4

Finally, Monaco argues that Count V is not pled with particularity as required by Fed. R. Civ. P. 9(b), nor does AG allege any facts to support a claim for negligent or intentional misrepresentation.

## I.      Count I—Breach of Contract

To state a claim for breach of contract, AG bears the burden of showing (1) the existence of a contract, (2) sufficient consideration to support the contract, (3) its ability and willingness to perform, (4) Monaco's breach of that contract, and (5) damages resulting from that breach.[8]   The Complaint alleges that: AG entered into negotiations for the Motor Coach with Greene; during negotiations Greene represented to AG that the Motor Coach was new and of superior quality; Greene delivered the Motor Coach; Greene presented a purchase agreement which AG signed; Greene valued the Motor Coach at $185,209.00; and, Greene valued the trade-in at $68,959.00.

Monaco argues that AG has not pled any facts remotely suggesting that there was a contract between Monaco and AG, rather, it has pled facts tending to show that AG and Greene were the contracting parties.  To be sure, AG does not allege that it had any contact, negotiations, or conversations with any agent of Monaco, prior to its contacts with Monaco seeking repairs under the warranty.  Although AG received a manufacturer's warranty on the Motor Coach, AG apparently confuses a claim for breach of the sales contract with a claim for breach of warranty, two separate claims.  Indeed, Monaco has not moved to dismiss Count II which is AG's claim for breach of warranty.  AG simply has failed to state a claim for breach of contract against defendant Monaco.

## II.     Count III—Revocation of Acceptance

_____

[8]*Weatherby v. Burlington N. & Sante Fe Ry.*, 209 F. Supp. 2d 1155, 1163, (D. Kan. 2002) (citation omitted).

5

Monaco moves to dismiss Count III because a buyer has no claim for revocation of acceptance against a manufacturer who was not the seller; Monaco did not enter into a contract with AG and is not in privity of contract.  AG argues that in Kansas, privity of contract is not a required element of a claim for revocation of acceptance, citing to *Johnson v. General Motors Corp.*[9] and *Chandler v. Anchor Serum Co.*[10]  Those cases, however, fall short of AG's proposition.

In *Johnson*, the Kansas Supreme Court addressed whether the manufacturer could obtain a setoff based on the continued use of goods *after* the buyer's revocation.[11]  The operative word here, "after," connotes that the buyer had already received the remedy of revocation.  Quoting from *Johnson*, AG latches onto a passage that states that "[d]irect contractual privity is not a prerequisite to filing suit for flawed goods."  That statement is correct.  Contractual privity is not required to state a claim in tort or for breach of warranty against a manufacturer.[12]  But a breach of contract claim requires privity of contract.[13]  Although the trial court in *Johnson* found that revocation against General Motors was justified,[14] the Kansas Supreme Court did not reach this issues because General Motors did not appeal that ruling.[15]  Rather, the Kansas Supreme Court

---

[9]668 P.2d 139 (Kan. 1983).

[10]426 P.2d 82 (Kan. 1967).

[11]*Johnson*, 668 P.2d at 141.

[12]*Sunflower Elec. Power Corp. v. Clyde Bergemann, Inc.*, No. 04-1003-WEB, 2005 WL 1842754, at * 9 (D. Kan. Aug. 3, 2005).

[13]*State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230 (Kan. 2005) (noting that privity of contract is required before a party can bring an action based on contract, except where a party is a third party beneficiary).

[14]Johnson, 668 P.2d at 141.

[15]*Id.* at 142.

only discussed "the appropriate measure of damages for a buyer's use of goods *after* revocation of acceptance."[16]

AG also quotes language in *Chandler* that "[a]n implied warranty does not arise from any agreement, as such, between the parties, but is imposed by operation of law on the basis of public policy."[17] But as Monaco posits, "*Chandler* concerned the implied warranty of merchantability, and held that privity is not required to state a cause of action for a breach of this warranty." Indeed, the Kansas Supreme Court penned the issue as "whether or not the plaintiff has made out a claim based on . . . (2) breach of implied warranty," a different claim from breach of contract.[18]

Thus, the issue of whether privity of contract is required to claim revocation against a remote manufacturer of the goods is an issue of first impression in Kansas. Starting with the statute, K.S.A. § 84-2-608 provides that a buyer may revoke acceptance of goods whose nonconformity substantially impairs the value to him if he has accepted the goods on the reasonable assumption that the seller would cure the nonconformity and it has not been cured, or buyer has accepted the goods without discovering the nonconformity if the acceptance was reasonably induced by the difficulty of discovery or by seller's assurances.[19] "Revocation of acceptance must occur within a reasonable time after the buyer discovers . . . the ground for it

---

[16]*Id*. at 141 (emphasis added).

[17]*Chandler v. Anchor Serum Co.*, 426 P.2d 82, 89 (Kan. 1967).

[18]*See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986) (stating that a claim for a nonconforming product can be brought as a breach of warranty or a buyer can revoke acceptance and sue for breach of contract); *Sunflower Elec. Power Corp.*, 2005 WL 1842754, at * 9) (noting that an action for revocation and for breach of warranty are two distinct causes of action).

[19]K.S.A. § 84-2-608(1)(a)-(b).

7

and before any substantial change in condition of the goods which is not caused by their own defects."[20]   Accordingly, a buyer may revoke acceptance when (1) there is a nonconformity that substantially impairs the goods to the buyer; and (2) the buyer accepted the goods either (a) without discovery of the defect if acceptance was reasonably induced by the seller's assurances or difficulty of discovery, or (b) the buyer knew of the nonconformity and reasonably assumed that seller would cure the defect.[21]

Under K.S.A. § 84-2-711(1), a buyer that justifiably revokes acceptance may recover from the seller any monies paid.[22]   Seller "means a person who sells or contracts to sell goods."[23] Of course, Monaco is not the seller of the Motor Coach, Greene is.   Nor is Monaco in privity of contract with AG.

As Monaco points out, the majority of courts addressing this issue have concluded that without contract privity, a buyer cannot revoke a contract against a remote manufacturer.[24]   For example, in *Neal v. SMC Corp.*,[25] the Texas Court of Appeals reasoned that though privity of

---

[20]K.S.A. § 84-2-608(2).

[21]K.S.A. § 84-2-608 (comment 2) (citing *Newmaster v. S.E. Equip., Inc.*, 646 P.2d 488, 489 (Kan. 1982)).

[22]*Newmaster*, 646 P.2d at 490 (stating that revocation also permits a buyer to return defective goods to the seller).

[23]K.S.A. § 84-2-103(d).

[24]*See generally Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208 (6th Cir. 1974); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190 (N.D. Ga. 2005); *Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210 (Ariz. 1981); *Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144 (Conn. 1976); *Gasque v. Mooers Motor Car Co., Inc.*, 313 S.E.2d 384 (Va. 1984); *Reece v. Yeager Ford Sales, Inc.*, 184 S.E.2d 727 (W. Va. 1971); *Hardy v. Winnegabo Indus., Inc.*, 706 A.2d 1086 (Md. Ct. Spec. App. 1998); *Henderson v. Chrysler Corp.*, 477 N.W.2d 505 (Mich. Ct. App. 1991); *Neal v. SMC Corp.*, 99 S.W.3d 813 (Tex. App. 2003); *see also Alberti v. Manufactured Homes, Inc.*, 407 S.E.2d 819, 823-24 (N.C. 1991) (finding that the automobile manufacturer exception in the definition of "seller" makes remote automobile manufacturers sellers for purposes of revocation, but because defendant was not an automobile manufacturer, buyer could not revoke against defendant).

[25]99 S.W.3d 813 (Tex. App. 2003).

contract was not required under the Uniform Commercial Code as codified in Texas for a claim of breach of warranty, it was required for a revocation claim because a revocation claim seeks to put the buyer and seller in the position they were before the sale.[26]  Because a manufacturer not involved in the sale would have no part in returning the parties to the status quo, "[t]he nature of a revocation claim logically requires privity of contract."[27]

Those courts in the minority permit a buyer to revoke against a remote manufacturer where: (1) the person with whom the buyer dealt was an agent of the remote manufacturer;[28] (2) the warranty of the remote manufacturer failed of its essential purpose;[29] (3) the person with whom the buyer dealt was not able to cover the buyer's damages;[30] or (4) the warranty and the contract between buyer and seller were so closely aligned that they were received by the buyer as one agreement.[31]

This Court concludes that the Kansas Supreme Court would find that contractual privity is required for revocation.  In Kansas, "[r]evocation of acceptance is a remedy which allows a buyer to get rid of defective goods by returning them to the seller."[32]  Revocation is based on the equitable doctrine of rescission, which permits a buyer to disaffirm a contract  based on fraud,

---

[26]*Id.* at 816.

[27]*Id.* (citations omitted).

[28]*Clark v. Ford Motor Co.*, 612 P.2d 316 (Or. Ct. App. 1980) (finding that Ford was not the seller's principal); *Gaha v. Taylor-Johnson Dodge, Inc.*, 632 P.2d 483, 486 (Or. Ct. App. 1981).

[29]*Dufree v. Rod Baxter Imps. Inc.*, 262 N.W.2d 349, 356 (Minn. 1977)*; Gochey v. Bombardier, Inc.*, 572 A.2d 921, 923 (Vt. 1990).

[30]*Ford Motor Credit Co. v. Harper*, 671 F.2d 1117, 1126 (8th Cir. 1982).

[31]*Volkswagen of America, Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982).

[32]*Newmaster v. S.E. Equip., Inc.*, 646 P.2d 488, 490 (Kan. 1982).

9

mistake, or duress, and seeks to the place the parties in their pre-contract position.[33]  Comments to the code note that revocation of acceptance is a substitute for rescission.[34]  In this case, permitting revocation against Monaco would not accomplish that purpose.  Finding the majority rule more persuasive and concluding that the majority rule is consistent with Kansas's law on rescission and revocation of acceptance, the Court finds that  AG's revocation claim against the remote manufacturer fails as a matter of law.

### III.    Count V—Misrepresentation

Monaco moves to dismiss Count V for failure to state a claim for negligent or intentional fraudulent misrepresentation.  Rule 9(b) of the Federal Rules of Civil Procedure states that all averments of fraud must be pled with particularity.  A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[35]  The purpose of the rule is to give defendants fair notice of the allegations against them and factual grounds that support those allegations.[36]

Count V fails to state a claim for negligent or intentional fraudulent misrepresentation with the requisite particularity.  The Complaint states, either in Count V or through incorporation by reference in Count V, that: Greene advertised a Motor Coach for sale on its website; Greene represented to AG that the Motor Coach was new; based on misrepresentations, AG entered into the contract;  and as a result AG suffered damages.  This does not meet the particularity

---

[33]*Nordstrum v. Miller*, 605 P.2d 545, 554 (Kan. 1980); *see also Perry v. Goff Motors, Inc.*, 736 P.2d 949, 953 (Kan. Ct. App. 1987) (noting that revocation of acceptance is a substitute in the UCC for rescission).

[34]K.S.A. § 84-2-608 (comment 1).

[35]*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citations omitted).

[36]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

requirement of Rule 9.[37]  As stated above, Rule 9 requires the pleading party to state specific allegations about the time, place, and contents of the alleged misrepresentation.

 *Jamieson v. Vatterott Educational Center, Inc*, is instructive.  In *Jamieson*, plaintiffs alleged that Vatterott representatives knowingly made false representations its sponsors, accreditations, placement rates, status, affiliations, connections and educational services.[38]  Plaintiffs alleged that they enrolled based on these representations which they subsequently learned were false.[39]  The Court found that these allegations failed to plead fraud with the requisite particularity.  Although plaintiffs identified the subject of the misrepresentations, they did not specifically identify the content of the representations about job placement rates, the qualifications of the professors, and the skills necessary to obtain entry level employment.[40]  The Court also found the "when" aspect of plaintiffs' complaint deficient, stating that simply alleging that the "statements occurred before and during their enrollments" was not enough.[41]  Finally, the Court found that plaintiff had failed to state specifically who made the representations, noting that referring to "Vatterott agents and employees" was too broad and could encompass "virtually anyone associated with Vatterott."[42]

 Here, AG has not stated the time when the alleged misrepresentation occurred other than

---

[37]*See Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007) (finding that by identifying the subject of the misrepresentation and not what false representations were made about the subject did not meet Rule 9's particularity requirement ).

[38]*Id*. at 1155-56.

[39]*Id*. at 1155.

[40]*Id*. at 1157.

[41]*Id.*

[42]*Id*. at 1158.

merely stating that it occurred during negotiations.  AG does provide the substance of the alleged

misrepresentation by stating that "Greene represented that the Motor Coach was new and of

superior quality." But AG neither identifies what document represents that the Motor Coach was

"new,"[43] nor does AG specifically state who made such misrepresentation.  Greene is a company

comprised of a number of individuals and identification of a particular individual responsible for

the misrepresentations is necessary to place Monaco on the requisite notice.[44]  Thus, the Court

finds that AG's misrepresentation claim does not meet the particularity requirement of Rule 9(b)

and should be dismissed.

   **IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Monaco

Coach Corporation's Motion to Dismiss Counts I, III and V (Doc. 6) is **GRANTED**.

   **IT IS SO ORDERED**.

   Dated this 16th day of September 2008.


      S/ Julie A. Robinson
     **Judge Julie A. Robinson**
     **District Court Judge**

---

[43]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (identifying the documents that contained the alleged false statements).

[44]*See Jamieson*, 473 F. Supp. 2d at 1158 (citing *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774 (D.Colo. 1964)).